# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01696-SCT

*BOBBIE JOHNSON*

*v.*

*ST. DOMINICS - JACKSON MEMORIAL HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/14/2006 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HIAWATHA NORTHINGTON, II |
| ATTORNEYS FOR APPELLEE: | SHARON F. BRIDGES |
| | JOHN E. WADE, JR. |
| | JONATHAN R. WERNE |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 10/25/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND CARLSON, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Bobbie Johnson filed suit against St. Dominic-Jackson Memorial Hospital ("St. Dominic") alleging the negligence of its nurse in administering a shot which caused necrosis in an area of her soft tissue and, after treatment, left a scar and caused her pain and suffering. The Circuit Court of the First Judicial District of Hinds County entered judgment in favor of St. Dominic, consistent with the jury's verdict, from which Johnson now appeals. Having found sufficient evidence to support the verdict of the jury and determined that the trial judge

properly did not reconvene the jury after receipt of an ex parte communication from a juror, we affirm.

## FACTS

¶2. While recovering from gallbladder surgery at St. Dominic, Johnson began to experience nausea and vomiting. Her doctor prescribed 25 mg. of phenergan to be given by intramuscular injection. A nurse administered the injection. Sometime thereafter, the tissue around the injection site became inflamed and ultimately necrotic, requiring debridement of the area and skin grafting. The skin grafting and debridement left a visible scar, and, according to Johnson, the entire incident caused pain and suffering.

## DISCUSSION

I. **WHETHER THE TRIAL COURT ERRED BY DENYING BOBBIE JOHNSON'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, OR IN THE ALTERNATIVE, FOR A NEW TRIAL.**

*A. Motion for Judgment Notwithstanding the Verdict.*

¶3. The standard of review for denial of a motion for judgment notwithstanding the verdict (JNOV) is de novo as to the law applied by the trial court judge as well as the evidence presented during trial. The legal sufficiency of the evidence, and not the weight of the evidence, is tested in a motion for JNOV. *White v. Yellow Freight Systems, Inc.*, 905 So. 2d 506, 510 (Miss. 2004) (citing *Tharp v. Bunge Corp.*, 641 So. 2d 20, 23 (Miss. 1994)). "If there is substantial evidence in support of the verdict we will affirm the denial of the JNOV." *Natchez Elec. Supply Co. v. Johnson*, 2007 WL 2495311 *1, *3 (Miss. Sept. 6, 2007). "'Substantial evidence' is information of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different

2

conclusions." *Id.* at *4. All evidence must be viewed by this Court in a light most favorable to support the verdict. *Canadian Nat'l/Ill. Central R. Co. v. Hall*, 953 So. 2d 1084, 1089 (Miss. 2007); *Natchez Elec. & Supply Co.*, 2007 WL 2495311 at *4.

¶4. The basis of Johnson's claim is that St. Dominic was negligent, through its nurse Kattie Minor, by using the wrong length needle and failing to utilize the "z-track" method[1], in administering the phenergen injection to Johnson, which resulted in a wound, further medical treatment, and ultimately a permanent scar.

¶5. Nurse Minor initially stated during her deposition that she used a one-inch needle. At trial, she testified that her deposition testimony was incorrect and she actually used a one-and-one-half-inch needle. St. Dominic provided testimony that a one-and-one-half-inch needle was the standard of care and the only size needle dispensed on that unit.

¶6. As to Johnson's second substantive allegation that no jury could have found that the z-track injection method was unnecessary, Johnson's expert testified that even if the nurse in question had used the z-track technique advocated by Johnson, the patient could not have been assured a different outcome. Further, Johnson's expert could point to no literature that set forth a directive that specifically stated that phenergan should be administered using the z-track method. St. Dominic's expert provided evidence that the drug manufacturer did not specify use of the z-track technique in the administration of its product, phenergan. St. Dominic's expert testified that the z-track method was not the standard of care for intramuscular phenergan injections.

---

[1]The z-track method involves moving the superficial tissue aside with one hand while administering the injection at an angle with the other hand.

¶7. This Court cannot reverse the judgment on the ground that insufficient evidence exists to support a jury verdict relative to the length of the needle or the method of administering the injection. We find that sufficient testimony supported the jury's verdict for St. Dominic.

   B.    *Motion for a New Trial.*

¶8. The standard of review on a motion for a new trial is abuse of discretion. ***Steele v. Inn of Vicksburg, Inc.***, 697 So. 2d 373, 376 (Miss. 1997). The weight of the evidence, rather than the legal sufficiency, is tested in a motion for a new trial. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Bush v. State****,* 895 So. 2d 836, 844 (Miss. 2005) (citing ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997)); *see* ***Lift-All Co. v. Warner***, 943 So. 2d 12, 15 (Miss. 2006). Our role of reviewing a challenge to the weight of the evidence is that of a thirteenth juror.[2] ***Bush v. State***, 895 So. 2d at 844.

¶9. The evidence reviewed, however, ought to be weighed in the light most favorable to the verdict. ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997). "[I]f the jury verdict is supported by the substantial weight of the evidence, it should not be set aside." ***Lift-All Co. v. Warner***, 943 So. 2d at 15. "This Court shall reverse a trial judge's denial of a request for

---

[2]As we noted in ***Bush***, this Court has "specifically disclaimed any role as the 'thirteenth juror' in the context of granting a new trial on the issue of damages, ***Patterson v. Liberty Associates, L.P.***, 910 So. 2d 1014, 1022 (Miss. 2004), as well as when we review a motion for judgment notwithstanding the verdict, ***Allen v. Mac Tools, Inc.***, 671 So. 2d 636, 646 (Miss. 1996). However, when the trial court (and subsequently the appellate court) reviews a verdict that is alleged to be against the overwhelming weight of the evidence, this presents a distinctive situation which necessitates the court sitting as a 'thirteenth juror.'" ***Bush v. State***, 895 So. 2d at 844, n.2.

4

new trial only when such denial amounts to a [sic] abuse of that judge's discretion." ***Steele v. Inn of Vicksburg, Inc.***, 697 So. 2d 373, 376 (Miss. 1997) (quoting ***Shields v. Easterling***, 676 So. 2d 293, 298 (Miss. 1996) (further quoting ***Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass'n***, 560 So. 2d 129, 132 (Miss. 1989)).

¶10.   A jury's verdict is given great deference by this Court, and "conflicts of evidence presented at trial are to be resolved by the jury." ***Lift-All Co. v. Warner***, 943 So. 2d at 1; ***Blossman Gas, Inc. v. Shelter Mut. Gen. Ins. Co.***, 920 So. 2d 422, 426 (Miss. 2006); ***Venton v. Beckham***, 845 So. 2d 676, 687 (Miss. 2003) (citing ***Jackson v. Griffin***, 390 So. 2d 287, 289 (Miss. 1980)).   Only if the plaintiff makes a strong case for error by the trial court is this Court free to reverse the trial court's denial of a motion for a new trial.   The verdict must be contrary to the substantial weight of the evidence in order to warrant a reversal of the verdict and a new trial. ***Blossman Gas, Inc. v. Shelter Mut. Gen. Ins. Co.***, 920 So. 2d  at 424.   This verdict does not, as in ***Blossman,*** shock the conscience or rest on a complete lack of evidence. ***Id.*** at 426-27.

¶11.   The jury was free to accept or reject any or all of the testimony and evidence presented.   The jury chose to accept the testimony that supported St. Dominic and rendered a verdict  in its favor.   This Court finds that the overwhelming weight of the evidence is not contrary to the jury's verdict for St. Dominic.   A reversal of the judgment denying Johnson's motion for a new trial is not warranted.

¶12.   St. Dominic has set forth substantive evidence to counter every element of plaintiff's prima facie case, thus providing a credible basis for the jury to render a verdict in favor of St. Dominic, which is the legal standard of sufficiency and weight that is required of it.   This

5

being the case, this issue is without merit. This Court will not disturb the jury verdict in favor of St. Dominic; the jury's verdict for the defense will stand; and the trial court's denial of Johnson's motion for JNOV, or in the alternative, for a new trial, is hereby affirmed.

**II.   WHETHER THE TRIAL COURT ERRED IN FAILING TO RECONVENE THE JURY TO DETERMINE ITS TRUE VERDICT.**

¶13.   The second claim of error we address is whether the trial court erred in denying Johnson's request to reconvene the jury to determine its true verdict. Johnson contends that an electronic communication sent by the jury foreman to the circuit court judge after the trial raised proper questions that required the trial court to reconvene the jury. St. Dominic argues that jurors may not be heard to impeach their own verdict. The trial court held the ex parte jury communication to be improper and denied Johnson's request to reconvene the jury as incompetent and inadmissible.

¶14.   The circuit court judge received the following email after the trial:

> Judge DeLaughter, my name is . . . . I recently served as foreman for the jury in one of your court cases, "Bobbie Johnson vs. St. Dominic-Jackson Memorial Hospital". [sic] The experience was great and memorable as it was my first jury duty assignment.
>
> This letter's purpose is to request your follow-up review to the last Court's instruction to the jury. I believe that justice was served, but my conscience wants me to make sure that the jury was not swayed on a misinterpretation.
>
> In one of the initial instructions, I believe #10, I believe it read in the below manner for the 1st charge for the jury: (a) To determine that the needle length in question was not the right size **OR** (b) that the Z-track method should have been used. This clearly is an either – or scenario.

6

Upon your last court instruction to the jury (in response to the jury's last question), we the jury translated those guidelines as not an "OR" situation anymore, but as an "AND" situation meaning the following:

Determine (1), then if you believe (1), determine (2) and then if you believe (2), then determine 3. In other words, the path to (3) was (1) **And** (2) **And** (3). And anything otherwise, we must return a verdict for the defendant. This final instruction was a tremendous swing vote mechanism; thus, I wanted to be diligent by writing you this letter ...that is probably a bit late.

If you feel that the jury interpreted the instructions properly, then justice was indeed served. If not, then I'm not sure what is the next step; however, I do feel that the first step was to notify you of the "possible" misinterpretation.

Again, I am not sure that there was a misinterpretation, as 12 jurors interpreted the exact same thing; that the path to (3) was (1) **And** (2) **And** (3). Only you can decide whether or not there was misinterpretation on anyone's part. Normally when my conscience shows me something like this, then I at least have to look into it (or in this case, I'm requesting that you do).

Regards,
[Jury foreman]

¶15. Inquiries into the validity of verdicts are governed by Rule 606(b) of the Mississippi Rules of Evidence, which provides that a juror may not impeach a verdict by using thought processes or discourses which may have contributed to a verdict.

Upon an inquiry into the validity of a verdict or indictment, *a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any juror's mind or emotions* as influencing him to assent to or dissent from the verdict or indictment *or concerning his mental processes in connection therewith*, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his

7

affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Miss. R. Evid. 606(b) (emphasis added).

¶16.    Rule 606(b) has been interpreted by this Court as prohibiting consideration of any evidence from a juror by affidavit or any other form of communication that would invite the Court to examine the deliberations of a jury. *Gladney v. Clarksdale Beverage Co., Inc.,* 625 So. 2d 407, 412 (Miss. 1993).

¶17.    Johnson argues that the verdict announced by the jury after the trial does not represent the true verdict of the jurors. She cites *Martin v. State* in support of her request to reconvene the jury. *Martin v. State*, 732 So. 2d 847 (Miss. 1998). In *Martin*, we held that a trial court has the authority to determine whether or not a clerical error has occurred when the jury verdict was rendered, as well as the authority to correct any such error. *Id.* at 854-55. The jurors in *Martin* believed they were finding the defendant guilty of a misdemeanor charge of marijuana possession, and not guilty of a felony charge of morphine possession. The confusion was a result of a mistake as to what constituted the charges in Count I and what constituted the charges under Count II of the indictment; consequently, the verdict rendered was not what the jury had intended. *Id.* at 848.

¶18.    While *Martin* does stand for the proposition that a very narrow exception may be found when a jury votes and agrees on a verdict that is at variance with the verdict rendered, we strongly cautioned that such an exception is severely limited to those few-and-far-between cases where the facts are closely aligned with *Martin*. *Id*. at 854. This Court further limited our holding in *Martin* by adopting the footnote in *Robles* that set forth the

8

meaning of clerical error in a jury verdict. *Id.* (referencing *Robles v. Exxon Corp.*, 862 F.2d 1201 (5th Cir. 1989)). The situation addressed by the footnote in *Robles* and adopted by this Court in *Martin* is in line with the facts of the case *sub judice.* Johnson fails to point to any exception that would allow this Court to inquire into this jury verdict.

> The category of "clerical" errors . . . can be understood to refer only to discrepancies between the verdict delivered in court and the precise verdict physically or verbally agreed to in the jury room, not to discrepancies between the verdict delivered in court and the verdict or general result which the jury testifies it "intended" to reach.

*Id.* at 1208.

¶19. Public policy does not support an attack on jury verdicts on the grounds of a supposed need to determine how the jury deliberated or what the jury was thinking. *Robles*, 862 F.2d at 1205. We must protect our jurors against harassment after they have rendered a verdict, insure the finality of their verdicts, and strive to avoid manipulation of a verdict by disgruntled ex-jurors. *Robles*, 862 F.2d at 1206 (citing *Peveto v. Sears, Roebuck & Co.*, 807 F.2d 486, 489 (5th Cir. 1987)). The doctrine of *res judicata* must be honored. As the Senate Judiciary Committee noted, "Jurors will not be able to function effectively if their deliberations are to be scrutinized in post-trial litigation. In the interests of protecting the jury system and the citizens who make it work, rule 606 [of the Federal Rules of Evidence] should not permit any inquiry into the internal deliberations of the jury." *Robles*, 862 F.2d at 1205 (citing S. Rep. No. 93-1277, 93d Cong., 2d Sess. 13-14 (1974)). The United States Supreme Court has long held that an individual attack on a jury verdict is unwise. *McDonald v. Pless*, 238 U.S. 264, 267 (1914). Mississippi law is wholly consistent with this line of reasoning and will not be disturbed.

¶20. Speculation as to how the jury did or did not interpret its instructions is not a question properly before this Court, being precluded by Mississippi Rules of Evidence, common law, and the overarching principles of *res judicata*. The email a juror sent to the circuit court judge after the trial concluded indicated that the jury may have misinterpreted an instruction. Such a concern does not, as Johnson claims, represent that the jury verdict was not rendered as intended.

¶21. Indeed, the email indicates that the foreman believed it was possible there was a misinterpretation, a speculation that is impermissible under Rule 606(b) of the Mississippi Rules of Evidence. Rule 606(b) bars testimony by jurors to impeach a verdict regarding "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him." Miss. R. Evid. 606(b).

¶22. Our law is well-settled on this point -- jurors may not impeach their own verdicts on the basis of their mental processes or deliberations. *Puckett v. State*, 879 So. 2d 920 (Miss. 2004) (quoting *Lewis v. State*, 725 So. 2d 183, 189 (Miss. 1998) (citing *Fairman v. State*, 513 So. 2d 910, 915-16 (Miss. 1987)).

¶23. Johnson's request to reconvene the jury is improper and without merit on public policy grounds, the overarching doctrine of *res judicata*, the Mississippi Rules of Evidence, and case law. The trial court's judgment denying Johnson's request to reconvene the jury is affirmed, and the jury verdict stands as rendered.

## CONCLUSION

10

¶24. The circuit court was correct in denying Johnson's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. The record reflects sufficient evidence to sustain the jury verdict, a verdict that is not against the overwhelming weight of the evidence. Therefore, the circuit court's judgment denying Johnson's motion for JNOV, or in the alternative, for a new trial, is affirmed. Further, the circuit court was correct in denying Johnson's request to reconvene the jury as improper and without merit. Therefore, the circuit court's denial of Johnson's request to reconvene the jury is affirmed.

¶25. **AFFIRMED.**

**SMITH, C.J., DIAZ, P.J., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.  GRAVES, J., CONCURS IN RESULT ONLY.**