CARLTON, J.,
for the Court:
¶ 1. On March 5, 2004, Dale and Wanda Pierce (collectively, the Pierces) filed suit against Dr. William J. Gibson Jr., alleging that Dr. Gibson negligently failed to provide adequate medical treatment to Wanda. After a trial held in the Rankin County Circuit Court on October 13, 2010, the jury returned a verdict in favor of Dr. Gibson. On October 19, 2010, the circuit court entered its final judgment reflecting the jury’s verdict. The Pierces filed a motion for a new trial on October 25, 2010, *884 which the circuit judge subsequently denied. On July 14, 2011, the Pierces filed this appeal, asserting that the jury verdict in favor of Dr. Gibson was against the overwhelming weight of the evidence. Finding no error, we affirm.
FACTS
¶2. Wanda Pierce sought preventative medical treatment from Dr. William J. Gibson Jr., a breast and thyroid specialist, from 1984 through 2003. Wanda had a family history of breast cancer and also suffered from a condition called fibrocystic disease, which caused the formation of multiple cysts in her breasts. Between 1984 and 2003, Wanda scheduled appointments with Dr. Gibson every six months for checkups. During that time frame, Dr. Gibson removed one benign mass from Wanda’s breast. Dr. Gibson also performed numerous fine-needle aspirations upon various masses that he discovered in both of Wanda’s breasts over the years.
¶ 3. In June 2002, Wanda met with Dr. Gibson for one of her regular checkups. The record shows that Dr. Gibson performed an ultrasound in his office at this June 2002 visit. Wanda’s medical records from the visit reflect “numerous cysts bilateral,” [1] but no solid masses. Wanda asserts Dr. Gibson found a mass on her right breast at this June 2002 visit, but Dr. Gibson claims he found no mass in her right breast at this visit, citing his medical records from that exam. Wanda testified that during this visit in June 2002, Dr. Gibson palpated her right breast, discovered a mass, and inquired about it. Wanda asserts that she informed Dr. Gibson that she had failed to notice the mass, and in response, Dr. Gibson placed Wanda’s hand over her breast to help her feel the mass. Wanda testified that Dr. Gibson told her that the mass was “round,” “moveable,” and a “cyst.” Wanda testified that Dr. Gibson instructed Wanda to watch the mass for six months, then return to his office in January 2003.
¶ 4. At trial, Dr. Gibson testified that he found no mass[2] in Wanda’s right breast during the June 2002 visit, but he testified he found a small cyst on Wanda’s left breast, as documented on the report of that exam. The report of this examination reflects an ultrasound was performed. However, Wanda’s daughter, Rachel, testified that she observed the conversation between Dr. Gibson and Wanda where Dr. Gibson allegedly alerted Wanda to the discovery of a mass on her right breast.[3] As stated, Dr. Gibson’s medical record documenting Wanda’s June 2002 examination was admitted into evidence and reflected “numerous cysts bilateral” in both of Wanda’s breasts, as well as a “palpable cyst at four o’clock in the left breast.” However, no documentation of a mass in Wanda’s right breast appears in the medical record from the June 2002 visit. Dr. Gibson further explained that a mass and cyst are characterized differently, and he stated he *885 made sure to distinguish between the two in his medical records.
¶ 5. Wanda returned as directed to Dr. Gibson’s office six months later in January 2003 for her follow-up appointment. Dr. Gibson examined both of Wanda’s breasts, and Wanda asserted in her testimony that he reported to her that the lump in her breast was still round, moveable, and a cyst. Dale Pierce, Wanda’s husband, accompanied Wanda to this appointment. Dale testified at trial that Dr. Gibson told Wanda that the lump had gotten bigger. Dr. Gibson disputed this allegation at trial, denying any previous knowledge or previous discovery of this lump or mass in her right breast. As previously discussed, Dr. Gibson testified that he first discovered the mass in Wanda’s right breast[4] during this January 2008 appointment, and upon discovery of the mass, he referred Wanda to River Oaks Hospital in Flowood, Mississippi, for her annual mammogram. Wanda received this annual mammogram in January 2003, as referred, and this mammogram reflected what the radiologist described as a benign-appearing cyst.
¶ 6. More specifically, when reviewing Wanda’s January 2003 mammogram results, the radiologist, Dr. Ed Barham, noted a “nodular opacity” in the right breast and recommended an ultrasound. Dr. Barham performed an ultrasound on Wanda’s right breast, which reflected a “benign-appearing” cyst in her right breast. Dr. Barham also observed that the cyst was 1.2 centimeters, and observed “no solid masses or other suspicious findings.” No biopsy was done at that time based upon the ultrasound findings. The record nonetheless shows that the radiologist noted to Dr. Gibson that “a negative report should not delay biopsy of a dominant mass or clinically suspicious condition.” Dr. Gibson instructed Wanda to return in six month for an examination.
¶ 7. Wanda returned to Dr. Gibson’s office on June 10, 2003. Wanda alerted Dr. Gibson that the lump in her breast had more than doubled in size. Dr. Gibson performed a fine-needle aspiration on the mass. The cytology report states: “positive — malignant cells adenocarcinoma.” Wanda’s medical records from that day state: “Lump in right breast is bigger.” On Friday, June 13, 2003, Dr. Gibson called Wanda and informed her that she had breast cancer. Dr. Gibson instructed Wanda to return on the following Monday for a lumpectomy.
¶ 8. Wanda testified that she asked Dr. Gibson to perform a mastectomy, but she asserted that Dr. Gibson insisted on a lumpectomy, informing Wanda that she would not require a mastectomy if the tumor were “encapsulated.” Dr. Gibson’s testimony confirms that he indeed recommended a lumpectomy for the removal of the mass. Dale testified that while waiting with Wanda in the surgical holding area, he asked Dr. Gibson “How in the world did we get here?” Dale stated that Dr. Gibson responded, “I think you know, I just missed it.”
¶ 9. Wanda asserts that Dr. Gibson negligently failed to perform a sentinel node biopsy at the time of the lumpectomy and made no effort to examine Wanda’s lymph nodes. After the surgery, Dr. Gibson called Rachel and reported to her that the pathology reports provided that the surgical margins were clear, and Dr. Gibson “had gotten all the cancer.”
¶ 10. Rachel and Dale testified that after Dr. Gibson allegedly admitted to them *886 that he “just missed it,” referring to Wanda’s cancer, they decided to seek the opinions of other doctors on Wanda’s condition. In order to prepare to meet with other doctors, the Pierces sought Wanda’s medical records and pathology report from the lumpectomy. Soon after requesting the pathology report, Dr. Janis P. McNeill, a pathologist at the lab that examined the mass Dr. Gibson removed from Wanda’s breast, called Wanda and explained that the margins were not in fact clear, and Dr. Gibson had failed to remove all of the cancer. After receiving that phone call, Rachel testified that she called Dr. Gibson numerous times, and she alleged that he would neither accept nor return her calls. Wanda testified that since Dr. Gibson failed to return Rachel’s phone calls, Wanda decided to “get other opinions.” Wanda testified she then proceeded to see other doctors in Memphis and Birmingham.
¶ 11. In an effort to find a new physician, Wanda met with multiple breast-cancer specialists. On July 7, 2003, Wanda underwent a right mastectomy at the University of Alabama at Birmingham (UAB) Hospital. Shortly thereafter, she underwent chemotherapy. In October 2005, Wanda’s cancer recurred in her chest wall, and she underwent a chest-wall resection.
¶ 12. On March 5, 2004, the Pierces filed suit against Dr. Gibson, alleging that Dr. Gibson negligently had failed to provide adequate medical treatment to Wanda. Specifically, the Pierces alleged that Dr. Gibson negligently had failed to diagnose Wanda with breast cancer and negligently had failed to provide medical care upon its discovery. The Pierces sought to recover actual and punitive damages.
¶ 13. A jury trial was held on October 13, 2010, in the Rankin County Circuit Court. The trial court heard testimony from Wanda, Dale, and their daughter, Rachel, as well as Dr. Gibson and Dr. Ed Barham, the radiologist who performed and interpreted Wanda’s mammogram and ultrasound. The court also heard expert testimony from Dr. Linda Sanders Haigh and Dr. Galen Poole, who testified regarding the applicable standard of care in diagnosing and treating breast cancer.
¶ 14. On October 14, 2010, the jury returned a verdict in favor of Dr. Gibson. On October 19, 2010, the circuit court entered its final judgment reflecting the jury’s verdict. The Pierces filed a motion for a new trial on October 25, 2010, which the circuit judge subsequently denied. On July 14, 2011, the Pierces appealed the circuit court’s order denying the motion for a new trial, asserting the following assignment of error: whether the jury verdict in favor of Gibson was against the overwhelming weight of the evidence.
STANDARD OF REVIEW
¶ 15. The Mississippi Supreme Court has established that the standard for reviewing a motion for a new trial is abuse of discretion. Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997). “The weight of the evidence, rather than the legal sufficiency, is tested in a motion for a new trial.” Johnson v. St. Dominics-Jackson Mem’l Hosp., 967 So.2d 20, 23 (¶ 8) (Miss.2007). ‘When reviewing a de nial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)).
¶ 16. We review the evidence in the light most favorable to the verdict, only setting aside a jury verdict when it is contrary to the substantial weight of the evidence. Venton v. Beckham, 845 So.2d *887 676, 684 (¶ 27) (Miss.2008) (citing Ducker v. Moore, 680 So.2d 808, 811 (Miss.1996)); Piggly Wiggly of Greenwood, Inc. v. Fipps, 809 So.2d 722, 725 (¶ 10) (Miss.Ct.App.2001). Any conflicts in the evidence presented at trial are to be resolved by the jury. Venton, 845 So.2d at 687 (¶ 86) (citing Jackson v. Griffin, 390 So.2d 287, 289 (Miss.1980)).
DISCUSSION
¶ 17. The Pierces argue that contrary to the overwhelming weight of the evidence, the jury found no negligence in Dr. Gibson’s medical treatment of Wanda. Dr. Gibson argues that the evidence presented at trial “overwhelmingly” supported the jury’s verdict establishing that no negligence occurred in his medical treatment of Wanda, and Dr. Gibson argues that evidence at trial overwhelmingly showed no mass existed in Wanda’s right breast in June 2002.
¶ 18. As acknowledged, the standard of review on a motion for a new trial is abuse of discretion. Steele, 697 So.2d at 376. A motion for a new trial challenges the weight of the evidence. Bush, 895 So.2d at 844 (¶ 18) (citations omitted). The Mississippi Supreme Court established that “[w]hen reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id.; see Lift-All Co. v. Warner, 943 So.2d 12, 15 (¶ 11) (Miss.2006).[5]
¶ 19. Upon appellate review, the evidence must be weighed in the light most favorable to the verdict. Herring, 691 So.2d at 957. “[I]f the jury verdict is supported by the substantial weight of the evidence, it should not be set aside.” Warmer, 943 So.2d at 15 (¶11). This Court gives great deference to a jury’s verdict, and “conflicts of evidence presented at trial are to be resolved by the jury.” Id. at 16 (¶ 11). The verdict must be contrary to the substantial weight of the evidence in order to warrant a reversal of the verdict and a new trial. Blossman Gas, Inc. v. Shelter Mut. Gen. Ins. Co., 920 So.2d 422, 424 (¶ 10) (Miss.2006).
¶ 20. In order to prevail in a medical-malpractice action, a plaintiff must establish, by expert testimony:
(1) the existence of a duty on the part of a physician to conform to the specific standard of conduct, (2) the applicable standard of care, (3) the failure to perform to that standard, (4) that the breach of duty by the physician was the proximate cause of the plaintiffs injury, and (5) that damages to the plaintiff resulted.
Patterson v. Tibbs, 60 So.3d 742, 753 (¶ 41) (Miss.2011) (quoting Estate of Northrop v. Hutto, 9 So.3d 381, 384 (¶ 9) (Miss.2009)). Mississippi has adopted the national standard of medical care, which provides:
each physician has a duty to use his or her knowledge and therewith treat through medical recovery, each patient, with such reasonable diligence, skill, competence, and prudence as are practiced by minimally competent physicians *888 in the same specialty or general field of practice throughout the United States, who have available to them the same general facilities, services, equipment and options.
McCaffrey v. Puckett, 784 So.2d 197, 203 (¶ 20) (Miss.2001) (citation omitted).
¶ 21. Conflicting evidence was presented to the jury in this case, and we must determine if the jury’s verdict is supported by the substantial weight of the evidence. See Venton, 845 So.2d at 684 (¶ 27). The Pierces claim that Dr. Gibson breached the standard of care in his treatment of Wanda. Specifically, the Pierces claim that a solid mass existed in Wanda’s right breast in June 2002 and that this mass remained untreated by Dr. Gibson until June 2003. In support of their argument that Dr. Gibson breached the applicable standard of medical care, the Pierces cite to Wanda and Rachel’s testimony claiming that a mass was present in Wanda’s right breast during her exam by Dr. Gibson in June 2002, and that Dr. Gibson failed to perform further testing to determine whether the mass was cancerous until June 2003. The Pierces also argue that Dale’s testimony recounting his conversation with Dr. Gibson in 2003 reflected Dr. Gibson’s admission that he “missed” Wanda’s cancer diagnosis.
¶ 22. The Pierces called Dr. Haigh, an expert in breast cancer surgery, as an expert witness to testify regarding the standard of care in breast cancer diagnosis and treatment. During voir dire, Dr. Haigh testified that she earned a Ph.D. in molecular physics, earned a pre-doctoral fellowship from the National Institutes of Health, and earned a post-doctoral fellowship at the Massachusetts Institute of Technology, where she had a grant from the American Cancer Center to study “how cancer works.” Dr. Haigh graduated from Harvard Medical School. Dr. Haigh served as a professor of surgery at Harvard and other universities. Dr. Haigh spent time as a surgeon in private practice, and wrote multiple published articles, as well as co-authored a book, on breast cancer.
¶ 23. Dr. Haigh testified that she had reviewed Wanda’s medical history relating to her breast cancer diagnosis and treatment. Regarding the tumor, Dr. Haigh opined: “In June of 2002, we know by history that a right breast mass was present, but no notation is made on it in the office note. We know it was there because it’s now bigger six months later.” Dr. Haigh further opined that the histories in the medical records of the other physicians Wanda saw while searching for a new physician were all identical to the history from Dr. Gibson’s own records.
¶ 24. Dr. Haigh also testified to numerous alleged breaches of the standard of care by Dr. Gibson. Specifically, Dr. Haigh asserted that Dr. Gibson failed to completely fill out his office records; did not have appropriate diagrams; and made no reference to lymph nodes. Dr. Haigh further testified that a lumpectomy was an inappropriate treatment for Wanda, based on the size of the tumor when compared to the size of Wanda’s breast. Dr. Haigh also testified that Dr. Gibson’s breach of the standard of care in failing to examine Wanda’s lymph nodes during the lumpectomy necessitated the removal of additional lymph nodes during later surgeries. Dr. Haigh further opined that Dr. Gibson breached the standard of care by failing to perform an excisional biopsy or fine-needle aspiration on the mass Wanda claims existed in her right breast in June 2002 and January 2003, and that such failure delayed the diagnosis of her cancer.
¶25. In contrast, Dr. Gibson denies that any mass existed in Wanda’s right breast in June 2002, and Dr. Gibson ar *889 gues that Dr. Haigh’s testimony fails to support Wanda’s claims of a breach of the standard of care in Dr. Gibson’s medical treatment. Dr. Gibson argues that Dr. Haigh admitted that she was unsure whether the cyst found in January 2003 was the same cyst Wanda alleged existed in June 2002. Dr. Gibson supports .his argument by acknowledging that at trial, Dr. Haigh agreed, upon examining Wanda’s January 2003 ultrasound results, that the cyst in Wanda’s right breast appeared to be benign. Significant to Dr. Gibson’s position, Dr. Haigh also confirmed at trial that based on surgical literature, the standard of care provides that upon discovering a simple cyst in a breast, the cyst should be reevaluated within six months. In further support of Dr. Gibson’s argument, Dr. Haigh testified that the book that she co-authored on breast cancer states that if a patient possesses a simple cyst, no requirement exists to aspirate or biopsy the cyst. Regarding Dr. Haigh’s testimony that Dr. Gibson breached the standard of care in failing to examine Wanda’s lymph nodes during the lumpectomy, Dr. Gibson asserts that no evidence exists showing that Wanda had any cancer in any of her lymph nodes. Dr. Haigh testified that if a patient suffers no reoc-currence of cancer in five years, the patient is “most likely” cured from the disease. Dr. Haigh agreed that Wanda has remained cancer-free for the last five years prior to trial.
¶ 26. Dr. Gibson submits that the evidence presented at trial proves, or provides substantial evidence supporting the jury’s verdict, that no mass existed in Wanda’s right breast in June 2002. With respect to the evidence supporting the jury’s verdict and Dr. Gibson’s argument, Dr. Gibson testified that the medical records for Wanda’s examination in January 2002 reflect he observed a cyst in Wanda’s left breast, not her right breast. The trial court admitted medical records for Wanda’s June 2002 exam into evidence at trial, and the records show that Dr. Gibson performed a physical exam and ultrasound study of both of Wanda’s breasts. Dr. Gibson points to his records from the June 2002 visit. In these records, he detailed his findings of more than fifteen cysts in both breasts, but no solid masses and no mass in the right breast. The medical records supported the trial testimony of Dr. Gibson, and the records show that Dr. Gibson found no existing masses. Consistent with Wanda’s history, the record shows that Dr. Gibson observed a palpable cyst on Wanda’s left breast. The medical record reflects that the ultrasound he performed showed that the cyst was smooth and clear. Dr. Gibson argues that his detailed records support that he conducted a through breast exam in June 2002, and no mass existed in Wanda’s right breast at that time. Dr. Gibson asserts that the evidence supports his testimony and the jury’s verdict that he complied with the applicable standard of care in providing medical treatment for a benign cyst discovered in January 2003 that displayed no solid mass or suspicious radiology findings.
¶ 27. Dr. Gibson also argues that the histories taken by all of the other physicians who met with Wanda conclusively showed that the mass in Wanda’s breast was discovered in January 2003, not June 2002. Dr. Gibson contends that the records of all of these physicians reflect that the physicians recorded that Wanda stated she discovered the mass in January 2003, not June 2002. In support of his argument, Dr. Gibson refers to documentation from July 2003 showing that Wanda requested her medical records from Dr. Gibson’s office after consulting with the doctors in Memphis and Birmingham in June 2003. Dr. Gibson asserts that this documentation and timeline therefore proves that Wanda *890 herself provided the medical history to the physicians. Conversely, Wanda claims that the histories transcribed in the medical records of the other physicians who treated her are incorrect, and she asserts that these physicians obtained her medical history from Dr. Gibson’s records. Dr. Gibson asserts that he did not provide inaccurate exam findings or inaccurate patient histories to the UAB physicians who treated Wanda after her lumpectomy. In support of his argument that these physicians failed to obtain Wanda’s medical history from his records, Dr. Gibson explains that medical records of the other physicians fail to use the same language used by him in medical documentation.
¶28. Dr. Gibson further refutes the Pierces’ claim that he admitted to Dale that he “missed” the cyst in Wanda’s breast. Dr. Gibson claims that the Pierces are attempting to take advantage of his aphasia, which he suffered as a result of a stroke in 2004, to misconstrue his testimony.[6] We acknowledge that matters of credibility and conflicts in testimony are matters for the jury to resolve. Indep. Life & Accident Ins. Co. v. Mullins, 252 Miss. 644, 651, 178 So.2d 663, 665 (1965). Dr. Gibson also challenges Wanda’s testimony that in performing the lumpectomy, he failed to remove all of the cancer. Dr. Gibson stated that after performing the lumpectomy and removing the mass from Wanda’s breast, the pathologist found that clear margins were obtained. However, the record reflects that a pathologist later re-reviewed the results and ultimately determined that the lumpectomy failed to obtain clear margins, therefore requiring further surgery. Dr. Gibson testified that had Wanda continued seeking treatment from him after discovering that the lumpectomy had failed to remove all of the cancer, then he would have then performed a masectomy.
¶ 29. Dr. Gibson presented expert testimony from Dr. Poole, an expert in surgical oncology and the treatment of breast cancer. Dr. Poole attended medical school at the University of Kentucky and did his general surgery training at Wake Forest University. After his residency, Dr. Poole completed a fellowship in trauma and critical care. Dr. Poole previously served as the chief of trauma service and the chief surgical oncologist at University of Mississippi Medical Center. Dr. Poole currently works at Crossgates River Oaks Hospital in private practice.
¶ 30. Dr. Poole testified that based on Dr. Gibson’s physical examination of Wanda, as well as the results of the mammogram and ultrasound, Dr. Gibson complied with the standard of care applicable to a reasonably prudent, minimally competent physician in providing medical treatment to Wanda for a benign cyst with no solid mass or suspicious findings. Dr. Poole testified that the standard of care failed to include or require fine-needle aspiration, surgical removal, or biopsy of a benign cyst with no solid mass unless the mass changed or grew larger. Dr. Poole specifically stated: “[I]t’s very clear to me, from the records that Dr. Gibson provided and are part of the records that I reviewed to prepare for this, that Dr. Gibson did meet the standard of care that any good[,] prudent physician would have met in this case.” Dr. Poole testified that based upon his training, education, and experience, he found no evidence on the clinical examination, mammography, or ultrasonography that any cancer existed in Wanda’s right breast in January 2003. Dr. Poole stated that based on the January 2003 ultrasound report showing no solid mass, the standard *891 of care did not include fine-needle aspirations, biopsy, or surgical removal. Dr. Poole additionally opined that Dr. Gibson also complied with the standard of care in performing a lumpectomy, rather than a masectomy, on Wanda in an attempt to get clear margins when removing the cyst. Dr. Poole also explained that breast surgeons “used to remove all of the lymph nodes in women with breast cancer[;] now, unless the nodes are palpable, we routinely do just the sentinel node biopsy, and only one to four lymph nodes from the armpit will be removed.” Dr. Poole opined that Wanda’s recurrence of cancer in her chest walls in October 2005 had no relation to Dr. Gibson’s treatment of Wanda or the lumpectomy he performed.
¶ 31. With respect to whether the jury’s verdict is based upon the substantial weight of the evidence, the Pierces assert that during the trial, Dr. Gibson’s expert witness, Dr. Poole, failed to sufficiently refute Dr. Haigh’s testimony that Dr. Gibson negligently breached the standard of care in providing medical care to Wanda. The Pierces specifically claim that Dr. Poole offered no opinion as to whether Gibson’s medical records met the standard of care for a minimally competent physician. The Pierces point out that Dr. Poole testified that throughout his prior testimony in medical-malpractice cases, he has never testified that a physician failed to meet the standard of care. However, the evidence offered at trial by Dr. Gibson included more than the testimony of Dr. Poole. We must therefore examine whether sufficient evidence exists to support the jury’s verdict that Dr. Gibson met the applicable standard of care. Venton, 845 So.2d at 684 (¶ 27).
¶ 32. The testimony of Dr. Gibson and of his expert, Dr. Poole, was supported by the testimony of radiologist Dr. Ed Bar-ham. Dr. Barham testified that he performed Wanda’s January 2003 mammogram and ultrasound and, after studying her results from the tests, documented in his report the “benign-appearing cyst” measuring approximately 1.2 centimeters. The January 2003 ultrasound also revealed no solid masses or other suspicious findings. Dr. Barham explained that his job is to report his findings to surgeons as to whether a patient’s test results are benign or malignant, and then the surgeon decides which course of treatment — whether biopsy, surgical intervention, etc. — would be appropriate. Dr. Barham also testified that he showed Wanda’s results to his medical partners, who all agreed that her cyst appeared benign. The record reflects that Dr. Poole’s expert testimony and the testimony of Dr. Barham both support Dr. Gibson’s testimony asserting he met the applicable standard of care in treating Wanda. Dr. Gibson’s trial testimony was also supported by his documentation of the June 2002 exam.
¶ 33. As previously acknowledged, any conflicts in the evidence presented at trial are to be resolved by the jury. Venton, 845 So.2d at 687 (¶ 36). In the present case, the jury determined the credibility of the witnesses, as well as the weight to give to the testimony and evidence at trial, in determining whether Dr. Gibson breached the standard of care in providing medical treatment to Wanda.[7] After hearing the testimony and evidence, the jury rendered a verdict in Dr. Gibson’s favor, finding no negligence in his medical treatment of Wanda. We find sufficient evidence in the record supports the jury’s verdict. Johnson, 967 So.2d at 24 (¶ 12); Venton, 845 So.2d at 684 (¶ 27).
*892 ¶ 84. Upon review of the record, we find that the jury’s verdict is not contrary to the overwhelming weight of the evidence, and we cannot say that the verdict shocks the conscience or rests on a complete lack of evidence. See Johnson, 967 So.2d at 28 (¶ 10). Accordingly, we affirm the trial court’s denial of the Pierces’ motion for a new trial.
¶ 35. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE AND FAIR, JJ., CONCUR. ROBERTS, J., CONCURS IN PART AND IN THE RESULT. MAXWELL AND JAMES, JJ., NOT PARTICIPATING.

. Dr. Gibson testified that he previously found these small cysts during a routine examination on Wanda in August 2001. During that visit, Dr. Gibson performed an ultrasound on both of Wanda's breasts and concluded, based on the results, that "[e]verything is consistent with the benign process. There are no suspicious findings on [the] breast exam or ultrasound.”

. Dr. Gibson also testified that the ultrasound reflected numerous cysts bilaterally in both of Wanda’s breasts. However, he explained that these cysts were only detectable on the ultrasound; he could not feel the cysts during the physical exam.

.The record reflects that Rachel scheduled her yearly exam with Gibson to coincide with Wanda's exam. Rachel testified that when she accompanied Wanda to the appointments, the two always shared an exam room.

. The patient history provided by Wanda at the beginning of her January 2003 examination, and then transcribed into Dr. Gibson’s medical records, reflects that Wanda reported to Dr. Gibson that the lump in her right breast was "bigger.”

. In Johnson, 967 So.2d at 23 n. 2, the supreme court stated that it had "specifically disclaimed any role as the ‘thirteenth juror’ in the context of granting a new trial on the issue of damages, ... as well as when [reviewing] a motion for [a] judgment notwithstanding the verdict.” (citation omitted). However, when an appellate court "reviews a verdict ... alleged to be against the overwhelming weight of the evidence, this presents a distinctive situation which necessitates the court sitting as a 'thirteenth juror.’ ” Bush, 895 So.2d at 844 n. 2.

. Dr. Gibson testified that as a result of his stroke, he suffered expressive aphasia, which made it difficult for him to express lengthy statements.

. Mullins, 252 Miss, at 651, 173 So.2d at 665 ("It is the province of the jury to determine the weight and worth of testimony, and the credibility of the witness.”).