992 So.2d 825 (2008)
Saundra GIGANTELLI, Appellant,
v.
Frank GIGANTELLI, Appellee.
No. 2D07-3450.
District Court of Appeal of Florida, Second District.
September 24, 2008.
Rehearing Denied October 28, 2008.
*826 Mark Schleben, Clearwater, for Appellant.
Mary Ellen Borja of Mary Ellen Borja, P.A., Clearwater, for Appellee.
FULMER, Judge.
Saundra Gigantelli (the Wife) challenges a Final Judgment of Dissolution of Marriage, raising six issues. We reverse the provisions of the final judgment pertaining to the marital home and child support. In all other respects, we affirm.
In their pleadings, the Wife sought exclusive use and possession of the marital home and Frank Gigantelli (the Husband) sought partition. However, at trial both parties requested the trial court to order that the house be sold and the proceeds divided equally between the parties. Because the parties assumed that a sale would be ordered, neither presented any testimony directed toward an award of exclusive use and possession. Nevertheless, the trial court awarded exclusive use and possession of the marital home to the Wife conditioned on the minority of the children or the death or remarriage of the Wife. The trial court also ordered that $600, representing one-half of the rental value of the home, would be added to the gross income of the Wife for the purpose of calculating child support, notwithstanding the fact that no evidence was presented as to rental value. In making this award, the trial court stated:
Since both parties anticipated that the Court would approve their agreement to sell the marital home and divide the proceeds, there was no evidence submitted as to the reasonable rental value. The Wife did testify that she anticipated renting an adequate apartment at the cost of $1,200 per month. As that is the amount of savings the Wife will realize by not incurring a rental expense, the court would conservatively estimate that amount reasonably corresponds to a rental value of the home.
The trial court also made a finding that "it is in the best interest of the children that they remain in the former marital home to minimize the disruption resulting from the parents' marital dissolution." Neither party presented any evidence directed to the issue of whether it is in the best interest of the children to remain in the marital home. In fact, in a motion for rehearing the Wife explained that she did not address the issue at trial because the parties were in agreement that the house would be sold. The Wife requested the opportunity to present evidence to demonstrate that remaining in the marital home was not in the best interest of the children for a variety of reasons. The trial court denied her request.
"A marital settlement agreement as to alimony or property rights which is entered before the dissolution of marriage is binding upon the parties. Moreover, an oral agreement reached by the parties and announced to the trial court is a fully enforceable settlement agreement." Dowie v. Dowie, 668 So.2d 290, 292 (Fla. 1st DCA 1996) (citation omitted); see also Alvarez v. Alvarez, 404 So.2d 200 (Fla. 2d DCA 1981) (reversing trial court's award of personal property to husband because it should have been awarded to the wife based on the parties' oral settlement agreement). Because the trial court failed to enforce the parties' agreement to sell the marital home, we reverse and remand for the trial court to reconsider the equitable distribution of the marital home.
*827 The record suggests that at the time of trial, the parties were anticipating moves and school placement changes that may have been hampered by the trial court's ruling on the marital home. If the passage of time has changed the parties' agreement that the home should be sold, the trial court must conduct an evidentiary hearing to address the equitable distribution of the marital home.
We also reverse the child support award because of several errors. First, the trial court failed to set forth factual findings to support and explain the income imputed to the Wife. The final judgment states: "The Wife's net monthly income is imputed at minimum wage to be $2,374.52 (Child Support Guidelines 47%) pursuant to the Child Support Guidelines Worksheet attached hereto."[1] At first glance, it is apparent that this number far exceeds full-time employment at minimum wage.[2] A review of the child support guidelines worksheet reflects the following calculation:

 Gross Monthly (Non-Taxable) Income $ 600.00
 Gross Monthly (Taxable) Income 2,156.13
 Fed., State, Loc. Tax 216.67
 FICA 164.94
 __________
 Net Monthly Inc. 2,374.52

The source of the $600 income was previously explained in the final judgment as imputed income representing one-half the rental value of the marital home. Although the trial court failed to explain the source of the $2156.13 income, we assume that $1000 of that number reflects the $1000 per month alimony that the trial court awarded, which leaves $1156.13 as the amount that the trial court actually imputed as the Wife's minimum wage income. At oral argument, neither party could explain how the trial court calculated the Wife's imputed income.
At trial the Wife testified that she was working 20 hours per week as a cosmetologist and her monthly salary averaged $578.07.[3] She was paid either on a per-hour basis at a minimum wage rate of $6.67 per hour or on the basis of a 40% commission, whichever was greater. She had not yet increased her speed enough to reach the commission level. She also received tips that averaged $1.95 per hour. She anticipated that her salary would increase as she became more proficient, and she testified that she was ready to begin working full time, which would be 35 hours per week. When asked by the trial court to estimate what her full-time salary would be, she indicated it could possibly exceed $10 per hour.
On her financial affidavit, the Wife listed $1109.03 as her monthly gross income. At trial, her counsel explained that this number was a mistake because it was higher than the $578 per month she was actually making on her part-time schedule. However, counsel asked the trial court to use the number on the financial affidavit because "we believe that she'll be there very shortly."
Needless to say, the trial court had a range of numbers to work with in determining the Wife's net monthly income, and *828 the number selected does fall within the possible high and low numbers in the range. The deficiency in the final judgment is that there is no explanation for how the trial court arrived at the number it used as imputed income. The trial court did specify that its imputation was based on minimum wage, which the Wife testified was $6.67 per hour. However, the trial court failed to set forth findings to explain the number of hours per week that were being imputed and the amount of tips, if any, that was included or whether some other basis was used to calculate the imputed income. Meaningful appellate review is hampered by the trial court's failure to make findings that explain how it arrived at the income imputed to the Wife. See McCants v. McCants, 984 So.2d 678, 682 (Fla. 2d DCA 2008).
The next error in the child support calculation is the fact that the trial court applied a child care credit in its determination of the Husband's child support obligation. Because no child care expenses were being incurred at the time of trial and no plan was in place to commence child care at a specified time, the evidence did not support the trial court's application of a child care credit.
The last error in the child support provisions pertains to the allocation of IRS income-tax exemptions. The final judgment provides that the Husband "shall have the benefit of any tax exemptions for the minor children," notwithstanding the fact that the Husband requested only one exemption for the youngest child. By allocating the exemptions directly to the Husband, the trial court failed to comply with the waiver requirement of section 61.30(11)(a)(8), Florida Statutes (2007). "The trial court cannot allocate the dependency tax exemption directly. It can, however, require the custodial parent to execute a waiver transferring the exemptions to the noncustodial parent." Wamsley v. Wamsley, 957 So.2d 89, 92 (Fla. 2d DCA 2007). Further, the trial court failed to condition the exemptions on the Husband's being current with support payments, as required by section 61.30(11)(a)(8). Id.
On remand, the trial court shall make a new determination of child support with sufficient findings to demonstrate consistency with the child support guidelines or sufficient findings to justify departure. We recognize that the evidence presented at trial was imprecise and was based largely on speculation about the Wife's intended employment. No doubt circumstances have now changed, and the parties should be able to provide proper assistance to the trial court by presenting fact specific evidence about actual income earned and actual child care expenses being incurred. In reconsidering child support, the trial court will also need to reconsider its tax exemption ruling in compliance with section 61.30(11)(a)(8).
Affirmed in part, reversed in part, and remanded with directions.
SILBERMAN and WALLACE, JJ., Concur.
NOTES
[1] The worksheet is in the record as an attachment to the original Final Judgment but appears to have been inadvertently omitted from the Amended Final Judgment.
[2] At the time of trial, the Wife testified that the minimum wage rate was $6.67 per hour and that 35 hours is considered full-time employment for a cosmetologist. A 35-hour work week at $6.67 per hour generates a gross weekly salary of $233.45 which produces a gross monthly salary of $1003.84.
[3] We note that $578.07 multiplied by two equals $1156.14. Thus, it appears that the trial court may have simply doubled the Wife's income from her 20-hour per week schedule to arrive at a full-time income. Such calculation is not supported by the Wife's testimony.