# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-00880-SCT

*BRE'ANNAH BANKS, A MINOR, BY AND*
*THROUGH HER NATURAL MOTHER, LEGAL*
*GUARDIAN AND NEXT FRIEND, ETTA BANKS;*
*LADARIUS HARP, A MINOR BY AND THROUGH*
*HIS NATURAL MOTHER, LEGAL GUARDIAN*
*AND NEXT FRIEND, BARBARA THOMAS;*
*KIMBERLY NORRIS, A MINOR BY AND*
*THROUGH HER NATURAL MOTHER, LEGAL*
*GUARDIAN AND NEXT FRIEND, MARY*
*NORRIS; ZERLANZEIA LAMBOUTHS, A MINOR*
*BY AND THROUGH HIS NATURAL MOTHER,*
*LEGAL GUARDIAN AND NEXT FRIEND, ANNIE*
*KING; AND LAKEDRICK REED, A MINOR BY*
*AND THROUGH HIS NATURAL MOTHER,*
*LEGAL GUARDIAN AND NEXT FRIEND,*
*JUANITA REED*

*v.*

*SHERWIN-WILLIAMS COMPANY*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/2012 |
| TRIAL JUDGE: | HON. JOHNNIE E. WALLS, JR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JARED WAYNE EASTLACK |
| | MARK W. DAVIS |
| | RON M. FEDER |
| | MARTIN D. CRUMP |
| | ROBERT SHIELDS CRUMP, III |
| ATTORNEYS FOR APPELLEE: | MARGARET OERTLING CUPPLES |
| | W. WAYNE DRINKWATER, JR. |
| | JOHN G. CORLEW |
| | KATHY A. SMITH |
| | JANINE CONE METCALF |
| | LUCAS WADE ANDREWS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 01/16/2014 |

**BEFORE WALLER, C.J., KITCHENS AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The instant matter is before the Court on appeal filed by Bre'Annah Banks, Ladarius Harp, Kimberly Norris, Zerlanzeia Lambouths, and Lakedrick Reed (collectively the "plaintiffs") against the Sherwin-Williams Company ("Sherwin-Williams").[1]  The matter is an action for products liability and negligence in the Circuit Court of Bolivar County, First Judicial District.  After both sides elicited evidence from lay and expert witnesses supporting their arguments, the trial court entered an order granting summary judgment for Sherwin-Williams based on the plaintiffs' failure to establish product identification, an essential element of their claim.  We hold that, under the applicable standard for the consideration of summary judgment, the plaintiffs have presented enough evidence to create an issue of material fact as to whether the paint in question came from Sherwin-Williams.  Accordingly, we reverse the judgment and remand the case.

## FACTS AND PROCEDURAL HISTORY

---

[1]The original defendants were Sherwin-Williams; Roy Peacock, the store manager of the Sherwin-Williams store in Cleveland, Mississippi; Playcore Holdings, Inc., seller of the playground equipment; WREN, Inc., a company hired to sandblast and repaint the equipment; and Sylvester Vickers, owner of WREN, Inc.  After granting Sherwin-Williams' and Roy Peacock's motion for summary judgment, the trial court entered a Final Judgment of Dismissal under Mississippi Rule of Civil Procedure 54(b) as to Sherwin-Williams, and the plaintiffs appealed.

¶2.     The five adult plaintiffs were all minor children who lived in Rosedale, Mississippi, in the early 1990s and attended the Bolivar County Head Start facility in Rosedale. They brought a claim for products liability and negligence in the Bolivar County Circuit Court, First Judicial District, against Sherwin-Williams, alleging Sherwin-Williams sold lead paint to the Bolivar County Head Start, and the paint was used to paint playground equipment. Plaintiffs further alleged that exposure to the lead paint on the playground equipment resulted in elevated levels of lead in their blood, causing injury. During their enrollment in the early to mid-1990s, the plaintiffs received blood-lead testing, which revealed that they had blood-lead levels ranging from fifteen to nineteen micrograms per deciliter.

¶3.     In 1985, Head Start hired Sylvester Vickers, a named defendant in the original suit, to sandblast all of the playground equipment, remove all of the old paint from it, and apply a fresh coat of paint, which he testified (and for our purposes the parties agree) was non-lead paint. It is uncontested that, between 1986 and 1991, Sherwin-Williams sold six gallons of lead paint to Bolivar County Head Start, although no direct evidence exists as to where the six gallons of lead paint were used. The lead paint sold by Sherwin-Williams included a gallon of yellow paint, four gallons of red, and a gallon of orange. In 2000, an investigation by the Mississippi Department of Environmental Quality revealed lead paint on the Rosedale Head Start playground equipment. The report itself notes that lead was found on playground equipment painted red, green, and yellow, as well as on equipment bearing unspecified colors or "many colors."

¶4.     Adolf Hilliard, the business manager of Bolivar County Head Start, testified that ninety-nine percent of the paint that Head Start purchased came from Sherwin-Williams. But

3

Sherwin-Williams countered that his testimony was equivocal and that he admitted he did not really know where all the paint was purchased. Hilliard stated in a sworn affidavit that, since 1985, all painting of Head Start equipment was handled by Head Start employees, and he was "almost certain" that, prior to 1991, all of the playground equipment paint was acquired from Sherwin-Williams. On the other hand, Robert Littleton, director of field operations for Bolivar County Head Start, testified that Bolivar County Head Start used Sherwin-Williams paint for "a lot of different projects," but, at times, they also would use paint from the now-closed Nowell's Lumber Company, Fleming Lumber Company, and, rarely, Bolivar Paint and Glass.

¶5.    Plaintiffs contend that James Lewis, a former janitor for the Rosedale center, personally applied lead paint to the Rosedale center playground equipment. In response, Sherwin-Williams points to inconsistencies in Lewis's statement, including the fact that the lead paint in question was gloss paint and oil-based while Lewis testified that, to his memory, the paint he used was non-gloss and water-based. In a sworn affidavit, Lewis stated that he acquired paint from Sherwin-Williams' store and painted the playground equipment in Rosedale with it sometime after 1985.

¶6.    Dr. Richard Lee opined on behalf of Sherwin-Williams as to chemical analyses he performed, which he claimed showed that the chemical composition of the lead paint on the playground equipment did not match Sherwin-Williams' paint formulas. Dr. Lee tested equipment supplied by plaintiffs' counsel, a see-saw left at the former playground, and monkey bars purchased from a neighboring town, which purportedly acquired them from the Rosedale center. Plaintiffs retained Dr. John Drexler as an expert; he testified that Dr. Lee's

4

analysis did not support his conclusion to a reasonable scientific probability, emphasizing that Dr. Lee's technique lacked any estimate of error, could not be tested, and had not been subject to peer review. In turn, Sherwin-Williams characterized Dr. Drexler's report and testimony as merely a "list of questions" about Dr. Lee's methodology rather than any actual conclusion as to whether the paint tested matched paint from Sherwin-Williams.

¶7. At the conclusion of discovery, Sherwin-Williams and Roy Peacock moved for summary judgment on the basis of lack of product identification. The trial court granted the motion on January 24, 2012. The court's order stated, "there is no evidence whatsoever to show that the six gallons of lead based paint sold by Sherwin-Williams to the Bolivar County Head Start Program ended up on the playground equipment at the Rosedale Center." Additionally, the court stated that the "Plaintiffs seem to want this Court, and ultimately a jury, to speculate on where the . . . alleged lead based paint on the playground equipment in Rosedale [came] from and come to the conclusion that it must have come from Sherwin-Williams." On April 17, 2012, the trial court entered a Final Judgment of Dismissal under Mississippi Rule of Civil Procedure 54(b) as to Sherwin-Williams, and the plaintiffs appealed.

## DISCUSSION

¶8. Under Mississippi Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). A trial court's grant or denial of a motion for summary judgment is reviewed

5

under a *de novo* standard. ***Poppenheimer v. Estate of Coyle***, 98 So. 3d 1059, 1062 (¶ 7) (Miss. 2012) (citing ***Whitaker v. Limeco Corp.***, 32 So. 3d 429, 433-34 (¶ 10) (Miss. 2010)).

¶9. In reviewing a trial court's grant of summary judgment, the Court views the evidence "in the light most favorable to the party against whom the motion has been made." ***Pratt v. Gulfport-Biloxi Reg'l Airport Auth.***, 97 So. 3d 68, 71 (¶ 5) (Miss. 2012). However, the opposing party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Miss. R. Civ. P. 56(e). Additionally, "it is incumbent upon the plaintiff in any products liability action to show that the defendant's product was the cause of the plaintiff's injuries." ***Moore ex rel. Moore v. Miss. Valley Gas Co.***, 863 So. 2d 43, 46 (¶ 13) (Miss. 2003). Where doubt exists as to whether a genuine issue of material fact exists, courts should err on the side of denying summary judgment. ***Todd v. First Baptist Church of West Point***, 992 So. 2d 827, 829 (¶ 9) (Miss. 2008).

¶10. In the instant case, the sole issue before the Court is whether the trial court erred in granting summary judgment in favor of Sherwin-Williams on the issue of product identification. As previously stated, review of a trial court's grant of summary judgment should be done "in the light most favorable to the party against whom the motion has been made." ***Pratt***, 97 So. 3d at 71 (¶ 5). "The party opposing the motion is required to bring forward significant probative evidence demonstrating the existence of the triable issue of fact." ***Brown v. Credit Ctr., Inc.***, 444 So. 2d 358, 364 (Miss. 1983) (citing ***Union Planters Nat'l Leasing, Inc. v. Woods***, 687 F.2d 117, 119 (5th Cir. 1982)). "[S]ummary judgment is improper when the plaintiff has advanced enough circumstantial evidence to take [his] claims

out of the realm of 'mere conjecture' and plant them in the solid ground of 'reasonable inference.'" ***Buckel v. Chaney***, 47 So. 3d 148, 156 (¶ 26) (Miss. 2010) (quoting ***Thomas v. Great Atl. & Pac. Tea Co., Inc.***, 233 F.3d 326, 330 (5th Cir. 2000)). Thus, stated differently, the issue *sub judice* is whether the plaintiffs advanced enough circumstantial evidence to create a reasonable inference that the lead paint on the Rosedale playground equipment came from Sherwin-Williams.

¶11. Taking the evidence in the light most favorable to them, the plaintiffs produced evidence demonstrating the following facts: (1) Sherwin-Williams sold six gallons of lead paint in the colors of yellow, red, and orange to Bolivar County Head Start over the span of 1986-1991; (2) in 2000, lead was found in the Rosedale Head Start center playground equipment in yellow, red, and green paint; (3) Vickers sandblasted the equipment in 1985, removing all the previously applied paint, and repainted the equipment with non-lead paint; (4) sometime after 1985 but before he quit working for Head Start in 1990, Lewis bought paint from Sherwin-Williams and personally painted the playground equipment; (5) the majority of the paint purchased by Bolivar County Head Start – according to Hilliard, ninety-nine percent – came from Sherwin-Williams; (6) none of the paint used to paint Head Start playground equipment came from Nowell Lumber; and (7) after 1985, Bolivar County Head Start never hired an outside contractor to paint its playground equipment again, choosing instead to have Head Start employees, including Lewis, paint the equipment.

¶12. The stated facts clearly fall into the category of circumstantial evidence, as they rely on an inference to connect them to the conclusion of fact that Sherwin-Williams' lead paint was used to paint the playground equipment. Taking them in the light most favorable to the

plaintiffs, they show that, at the moment in 1985 when Vickers finished stripping and painting the playground equipment, there was no lead paint on the equipment. Following the completion of Vickers's work, only Head Start employees painted the equipment, and they used only paint from Sherwin Williams. In 2000, the paint on the playground equipment tested positive for lead. The court need not draw every possible inference in favor of the plaintiff, only reasonable ones. *Parrillo v. Commercial Union Ins. Co.*, 85 F.3d 1245, 1250 (7th Cir. 1996). Given the facts plaintiffs have supported with evidence listed above, we hold that a jury could reasonably infer that the paint on the playground equipment came from Sherwin-Williams.

¶13.    Certainly, Sherwin-Williams has produced evidence in its favor, including, *inter alia*, that (1) the analysis of the playground equipment that indicated the paint contained lead was performed years after the plaintiffs left the program, (2) the Sherwin-Williams lead paint cans carried warnings to keep the paint out of the reach of children, (3) the Head Start program had a policy against using lead paint on playground equipment, (4) the chemical makeup of the paint on the playground equipment does not match the chemical makeup of Sherwin-Williams paint, and (5) contrary to Hilliard's testimony, the Head Start program bought paint from other sources. Nevertheless, the jury should be "permitted to pass upon the question of fact raised by this conflicting evidence." *Searles v. Alabama & Vicksburg Ry. Co.*, 69 Miss. 186, 13 So. 815, 816 (1891). "When evidence is conflicting, we defer to the jury's determination of the credibility of witnesses and the weight of their testimony." *Bickham v. Grant*, 861 So. 2d 299, 307 (¶ 34) (Miss. 2003) (quoting *Ducker v. Moore*, 680 So. 2d 808, 811 (Miss. 1996)). The credibility of witnesses and the weight of their

testimony, along with the interpretation of the evidence where there are multiple reasonable interpretations, is primarily a determination for the trier of fact. *Bickham*, 861 So. 2d at 307 (¶ 34); *Abrams v. Marlin Firearms Co.*, 838 So. 2d 975, 981 (¶ 24) (Miss. 2003); *Rainey v. Rainey*, 205 So. 2d 514, 515 (Miss. 1967).

¶14.    Without question, Sherwin-Williams has come forward with evidence contradicting the plaintiffs' evidence that the lead-containing paint came from Sherwin-Williams. Likewise, Sherwin-Williams attacks the credibility of the plaintiffs' witnesses. It is not, however, the province of the Court to make weight and credibility determinations during the summary judgment stage. "The weight and credibility of expert testimony are matters for determination by the trier of fact." *Hubbard ex rel. Hubbard v. McDonald's Corp.*, 41 So. 3d 670, 675 (¶ 19) (Miss. 2010) (citing *Univ. Med. Ctr. v. Martin*, 994 So. 2d 740, 747 (¶ 25) (Miss. 2008) (quoting *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990))). Determinations of weight and credibility of expert witnesses lie "within the sole province of the jury as fact finder." *Butler v. State*, 102 So. 3d 260, 268 (¶ 22) (Miss. 2012) (quoting *King v. State*, 798 So. 2d 1258, 1262 (Miss. 2001)).

¶15.    Sherwin-Williams contends that the instant case is similar to *Anglado v. Leaf River Forest Products, Inc.*, 716 So. 2d 543 (Miss. 1998), in which the Court affirmed a trial court's grant of summary judgment. In *Anglado*, riparian owners sued Leaf River Forest Products and others, alleging that a pulp mill operated by the defendants discharged toxic waste water containing dioxin. *Anglado*, 716 So. 2d at 544-45 (¶¶ 2-3). Like the case *sub judice*, the presence of the toxin was conclusively established, and the defendants had experts who presented evidence that the defendants were not responsible for the toxin. *Id.* at 545-46

9

(¶¶ 5-7). However, unlike the instant case, the plaintiffs in *Anglado* did not produce their own evidence to counter the defendants' expert witness testimony. *Id.* at 548 (¶¶ 21-22) ("The Anglado Plaintiffs produced no evidence that the defendants' mill is the source of any dioxin in the samples.")

¶16. According to the United States Supreme Court,

> [i]t is true that the issue of material fact required by Rule 56(c) . . . is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial.

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (interpreting Fed. R. Civ. P. 56 (c)). Analyzing the evidence in the light most favorable to the plaintiffs, *Pratt*, 97 So. 3d at 71 (¶ 5), the facts create a "reasonable inference," *Buckel*, 47 So. 3d at 156 (¶ 26), that the playground equipment was painted with Sherwin-Williams lead paint. Such an inference establishes a factual dispute to be resolved by the fact-finder.

## CONCLUSION

¶17. In the case *sub judice*, Sherwin-Williams did an excellent job of compiling evidence to contradict the plaintiffs' evidence that the lead paint on the playground equipment originated at its store in Cleveland, Mississippi. However, pursuant to the above analysis, Sherwin-Williams' evidence at best creates doubt that summary judgment is appropriate. If doubt exists regarding the propriety of summary judgment, then it should be denied. We hold that a jury may reasonably infer that Sherwin-Williams' lead paint was on the playground equipment. Accordingly, we reverse the trial court's grant of summary judgment

10

in favor of Sherwin-Williams and remand the case for further proceedings consistent with the instant opinion.

¶18.    **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE, AND KING, JJ., CONCUR.**