KITCHENS, Justice, for the Court:
¶ 1. Richard Pierce has a debilitating and deadly disease known as silicosis. Having worked for many years as a sandblaster, preparing surfaces for painting, Pierce sued, among multiple defendants, sellers of sand including Dependable Abrasives, alleging that Dependable’s failure to provide adequate warnings of the dangers of the inhalation of respirable silica caused his silicosis and rendered Dependable strictly liable. The jury returned a verdict for Dependable Abrasives and the trial court granted Pierce a new trial.[1] Aggrieved, Dependable Abrasives filed an interlocutory appeal in this Court. But, although the injury to Pierce was substantial, no causal link was established between the Dependable Abrasives product, Diamond Blast sand, and Pierce’s injuries. As such, the jury’s verdict was not against the overwhelming weight of the evidence. We therefore reverse and render.

FACTS AND PROCEDURAL HISTORY

¶ 2. Pierce worked as a sandblaster and painter from 1976 until 1992. According to Pierce’s trial testimony, this involved a work week of five to seven days, depending on weather, and workdays of eight to ten hours. A sandblasting machine shoots out sand at a high rate of speed through a nozzle, which is wielded by the machine’s user, in order to clean surfaces for painting. Pierce testified that the sand proceeds from the nozzle at a rate of 500 *893 miles per hour and that, when sand hits metal, it ricochets back in the direction of the machine’s user. In 1992, Pierce changed careers to become a truck driver because he “couldn’t stand the paint fumes.” But in March of 2012, Pierce was making a delivery in New Orleans when suddenly he could not catch his breath. During a five-day hospital stay, Pierce was diagnosed with silicosis.
¶ 3. Dr. Steven Haber, a pulmonologist, testified at trial on behalf of Pierce, explaining that “[s]ilicosis is a disease of the lungs related to inhaling these crystalline silica particles” which are “like little shards of glass.” He continued that the particles “get deep into the lung and they cause inflammation and then scar tissue. And it’s the scar tissue that causes [the] disease silicosis.” A “disabling disease,” silicosis is “caused by breathing dust that contain[s] small pieces of crystalline silica.” However, the “crystalline silica is so small that you can’t see it with the naked eye. And it’s like little shards of glass that will get into the lungs.” Those “very small pieces get into the lungs and they get trapped in there. And they cut the lung and they scar the lung.” But unfortunately, according to Dr. Haber, medicine has no cure for silicosis: “There’s no stopping it. There’s no slowing it down.” He went on to say that the greater the respirable silica exposure, the greater the adverse effect on the lungs: “at the higher dose you get a much more exuberate response to the scar tissue.” The dose to which Pierce was exposed “was substantial,” according to Dr. Haber. As such, Dr. Haber estimated Pierce’s life expectancy: “I certainly wouldn’t be surprised if’ Pierce were to die “in three or four years, but death “certainly would be likely” within seven years.”
¶ 4. Industrial hygienist Dr. Vernon Rose described silica as a “silent killer,” because it “provides no warning of any type to the individual who is going to be harmed.” Rose, tendered as an expert witness in the field of industrial hygiene, continued: “And that is applicable to sand and especially the type of sand, the form of sand that can cause disease, which is different than the sand in your children’s play box and sand box, if you will.” Res-pirable silica “can’t be seen.” In fact, “these particles that get into ... the worker’s lungs [are] ten microns or less in diameter. Human hair is about 75 to 90 microns in diameter.” In the context of sandblasting, where it strikes metal and fractures, the silica then becomes respira-ble, but “it has no taste” and “it has no odor,” and therefore “the harmful form of the size of the sand has no warning properties.”
¶ 5. Because silica is a “silent killer,” companies producing sand warn users of the toxic and deadly nature of the product. Pierce called Dr. Edward Karnes, an expert in ergonomics, or the discipline “concerned with an evaluation of the human factors that are involved in the design and use of products, equipment, and facilities,” to testify to the adequacy of warnings placed on Dependable Abrasives’ sand. Dr. Karnes testified that manufacturers placing products in the marketplace “are in the best position to know about the hazards associated with their product.” As such, manufacturers of products have an obligation to eliminate the hazard, to provide some type of guard against the hazard, or to warn users of the hazards. Dr. Karnes testified that the warning on Dependable Abrasives’ product, Diamond Blast sand, was “[g]rossly inadequate,” because, among other reasons, it failed to inform the user of the product of the latent, fatal danger of respirable silica.
¶ 6. The former president of the now-dissolved Dependable Abrasives, Inc., James Dickerson, was called at trial as an adverse witness by Pierce. Dickerson, *894 who had been owner and president of Dependable Abrasives from 1985 to 1998, testified that he sold Diamond Blast sand, which was marketed exclusively for sandblasting. Dickerson testified that he sold sand throughout Mississippi, Louisiana, and Alabama to eighty or ninety customers, but he had no sales receipts or records because they had been destroyed in a fire. According to Dickerson, eighty percent of his company’s sand was sold in Louisiana, fifteen percent was sold in Mississippi, and five percent was sold in Alabama. Dickerson testified that, of the eighty or ninety customers to whom he sold, he personally knew ninety percent of them and had actually been to and delivered the sand to their work sites.
¶ 7. Dependable Abrasives bought the sand, processed it, “bagged it and sold it in bulk in tanker trucks.” But Dependable Abrasives had not sold bagged sand until April of 1986: “[i]n the beginning it was mostly probably around 90 percent bulk sand; 10 percent bag sand. Eventually bagged sand grew to be about 20 percent.” Dickerson testified that, while all his competitors sold white sand, he sold brown sand “mined out of the red clay hills of Wiggins[, Mississippi].”
¶ 8. The parties never have disputed that Pierce suffers of silicosis, and Dr. Haber testified to the severity of Pierce’s silicosis. The parties did disagree at trial whether Pierce was exposed to sand produced by Dependable Abrasives. The defendants quipped: “[i]f we weren’t there, we cannot share the responsibility.” Nevertheless, Pierce testified that he had used Dependable Abrasives sand during his sandblasting career. He testified that “[i]t was a brown bag that had a diamond shape on it .... it looked like a star shining out from it and everything. And on the top of it had [written] Diamond Blast.” He recalled that the sand came from Wiggins, Mississippi. He recalled that there was a warning on the bag of Dependable Abrasives sand. When asked what he would have done if he had known that his inhalation of the product would be fatal, Pierce responded, “I’d [have] found something else to do.” But when asked the color of the sand he used from Dependable Abrasives, Pierce testified: “White. White sand.”
¶ 9. The case was tried from March 27, 2013, through April 3, 2013. On April 3, 2013, the jury returned a verdict for the defense. With regard to the first interrogatory to the jury, whether a preponderance of the evidence supported “that the Plaintiff, Richard Pierce, has injuries related to Plaintiff’s silica exposure,” the jury found in the affirmative. With regard to the second jury interrogatory, whether a preponderance of the evidence supported “that the Defendants’ products were defective because they failed to provide adequate warnings or instructions OR were defective in design, if any, and caused injuries to the Plaintiffs,” the jury by a vote of eleven to one voted “no.”
¶ 10. Pierce, on April 15, 2013, filed a “Motion for Judgment Notwithstanding the Verdict [JNOV], Or In the Alternative, For New Trial,” arguing that “the Jury’s finding that Dependable did not have a defective product because they provided an adequate warning is against all the evidence that was presented at trial.” On April 16, 2013, in accordance with the verdict, the circuit court rendered judgment in favor of Dependable Abrasives. But, following a hearing on the Motion for JNOV conducted on May 20, 2013, the circuit court entered an “Order Granting [Motion] for New Trial” on June 19, 2013. The circuit court held that “the jury’s finding that Dependable Abrasives did not have a defective product because they provided an adequate warning is against the overwhelming weight of the evidence presented at trial.” Dependable Abrasives *895 petitioned this Court for an interlocutory appeal, which was granted on August 14, 2013.
¶ 11. On interlocutory appeal, Dependable raises the following issue, and four subissues:
The Trial Court abused its discretion by granting Pierce a new trial because the jury’s verdict was not against the overwhelming weight of the evidence.
A. The jury had a legally sufficient evidentiary basis to find that Pierce failed to prove that Dependable’s product caused his injuries.
B. Because Pierce failed to prove that he was exposed to Dependable’s product, the adequacy of Dependable’s warning was a moot issue.
C. Alternatively, the jury had a legally sufficient evidentiary basis to find that Pierce failed to prove that Dependable’s warning was inadequate.
D. The Trial Court improperly shifted the burden of proof to Dependable.
Finding the issue of causation dispositive, we address only the following:
Whether the overwhelming weight of the evidence presented at trial supports the trial court’s grant of a new trial to Pierce, in light of Dependable Abrasives’ assertion at trial and on appeal that Pierce never was exposed to its product, Diamond Blast sand.

STANDARD OF REVIEW

¶ 12. “The standard of review on a motion for a new trial is abuse of discretion.” Johnson v. St. Dominics-Jackson Mem’l Hosp., 967 So.2d 20, 23 (Miss.2007) (citing Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997)). But “[a] jury’s verdict is given great deference by this Court, and ‘conflicts of evidence presented at trial are to be resolved by the jury.’” Johnson, 967 So.2d at 23 (citations omitted). This Court’s *“role of reviewing a challenge to the weight of the evidence is that of a thirteenth juror.” Johnson, 967 So.2d at 23 (citing Bush v. State, 895 So.2d 836, 844 (Miss.2005)). Nevertheless, “[t]he evidence reviewed ... ought to be weighed in the light most favorable to the verdict.” Johnson, 967 So.2d at 23 (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). “A new trial may be granted where the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty instructions, or when the jury has departed from its oath and its verdict is a result of bias, passion, and prejudice.” Dupree v. Plantation Pointe, L.P., 892 So.2d 228, 235 (Miss.2004) (citing Griffin v. Fletcher, 362 So.2d 594, 596 (Miss.1978)). This Court, “[w]hen reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence,” only will “disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Johnson, 967 So.2d at 23 (quoting Bush, 895 So.2d at 844) (citing Herring, 691 So.2d at 957). To meet the “unconscionable injustice” standard, the yerdict must “shock the conscience or rest on a complete lack of evidence.” Johnson, 967 So.2d at 23 (citing Blossman Gas, Inc. v. Shelter Mut. Gen. Ins. Co., 920 So.2d 422, 426-27 (Miss.2006)).

ANALYSIS

Whether the overwhelming weight of the evidence presented at trial supports the trial court’s grant of a new trial to Pierce, in light of Dependable Abrasives’ assertion at trial and on appeal that Pierce never was exposed to its product, Diamond Blast sand.
¶ 13. On interlocutory appeal, Dependable Abrasives argues that the *896 threshold question, product exposure, was not provén by Pierce at trial and, as such, the jury’s verdict was not against the overwhelming weight of the evidence. Pierce responds that the grant of a new trial should be affirmed and that the verdict was against the overwhelming weight of the evidence. In support of his argument, Pierce highlights the testimony of Dr. Karnes, who testified that the warning on the product inadequately warned of the deadly nature of respirable silica. Pierce also highlights his own testimony that he recalled the Dependable Abrasives’ product, Diamond Blast sand.
¶ 14. Pierce points out that “[t]here are two prongs a failure to warn claim must meet.” In order “[t]o rely on an inadequate warning to establish the existence of a defect, plaintiffs must prove that: 1. the manufacturer or seller knew or in the light of reasonably available knowledge should have known about the danger; and 2. that the ordinary user or consumer would not realize its dangerous condition.” 3M Co. v. Johnson, 895 So.2d 151, 166 (Miss.2005) (citing Miss.Code Ann. § 11-1-68(c)(i) (Rev.2014)). Pierce argues that both prongs were met, since Dickerson testified that he drafted the warning which appeared on the Diamond Blast sand, knowing of the potentially fatal hazard of silica inhalation. Because the warnings contained, in Pierce’s words, “soft language,” he was not on notice that he could die from inhalation of respirable silica. Dr. Karnes testified that the warning was “grossly inadequate.” Pierce, therefore, posits that “the jury ignored [Karnes’s testimony regarding the inadequacy of warnings] and proceeded to determine that the warning was safe. This was a startling abandonment of their duty....”
¶ 15. But Mississippi Code Section 11-1-63(c)(i) states:
In any action alleging that a product is defective because it failed to contain adequate warnings or instructions ... the manufacturer, designer or seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer, designer or seller, the manufacturer, designer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought that the ordinary user or consumer would not realize its dangerous condition.
Miss.Code Ann. § 11-1-63(c)(i) (Rev.2014) (emphasis added). In SM, the Court continued that “[a] key element ... for a failure-to-warn claim is proof of a causal link between the plaintiffs injuries and the product’s allegedly lacking a warning or having an inadequate warning.” 3M, 895 So.2d at 166. The Court continued: “In other words, the failure to warn must be the proximate cause of the injuries suffered or it is irrelevant.” Id. (citations omitted).
¶ 16. Product exposure is a threshold question in products liability cases: “[I]t is incumbent upon the plaintiff in any products liability action to show that the defendant’s product was the cause of the plaintiffs injuries.” Banks ex rel. Banks v. Sherwin-Williams Co., 134 So.3d 706, 710 (Miss.2014) (quoting Moore ex rel. Moore v. Miss. Valley Gas Co., 863 So.2d 43, 46 (Miss.2003)). Even accepting as true Pierce’s allegation that the warnings on the Diamond Blast sand were “grossly inadequate,” as posited by Dr. Karnes, there can be no recovery if Pierce failed to prove that the danger of inadequate warnings on Diamond Blast sand “caused the damage for which recovery is sought.”
¶ 17. Very recently, this Court considered the question of product exposure in *897 Mississippi Valley Silica v. Reeves, 141 So.3d 377 (Miss.2014). In that case, R.B. Reeves worked as a brakeman and as a conductor for Illinois Central Railroad from 1947 to 1991. Id. at 378. Reeves was exposed to sand and dust, dispensed onto the tracks for the purpose of creating locomotive wheel traction. Id. Reeves was diagnosed with interstitial pulmonary fibrosis and, after joining multiplaintiff suits against numerous defendants, died in 2010. Id. at 390. Following his death, Reeves’s widow and wrongful death beneficiary, Gwendolyn, was substituted as plaintiff. Id. The jury returned a verdict for Reeves, and Mississippi Valley Silica appealed the denial of its motion for judgment notwithstanding the verdict. Id. at 380.
¶ 18. In spite of an abundance of evidence regarding the extent of R.B.’s silica exposure, “Valley’s failure properly to warn about the dangers of silica exposure, and how R.B.’s exposure to silica had caused silicosis and ultimately, his death,” this Court reversed and rendered a judgment in favor of Mississippi Valley Silica. Id. at 380, 384. The Court held that “[t]he plaintiff failed to adduce sufficient evidence from which a jury reasonably could conclude that any appreciable amount of the silica inhaled by Robert B. Reeves over the course of his career was supplied by Valley.” Id. at 384. The Court continued: “No evidence of invoices or other records detailing sale of Valley sand to Illinois Central was adduced; no testimony by workers who actually filled the sand tanks on the locomotives was forthcoming.” Id. The only evidence linking Reeves’s injuries to Mississippi Valley sand was Reeves’s own testimony that he had handled a single bag of Mississippi Valley sand in the 1970s. Id.
¶ 19. In the present case, Pierce testified he had worked as a sandblaster between 1976 and 1992, that he had used several sands throughout his career, and that he had recognized the Diamond Blast (Dependable Abrasives’ brand) bag. Dickerson, Dependable’s president, testified that, although Dependable was founded in April 1985, the sand was not sold in bags until April 1986. Donna Pierce, the plaintiffs wife, testified that Pierce had worked for Williams Surry in Virginia for about a year, from around November 1986 through November 1987. She testified that he had worked for Mansville Industrial Coatings in the Virgin Islands from November 1987 through December 1990. Pierce, himself, testified that he had worked in the Virgin Islands for Mansville for three years. He testified that, in 1991, he began a new career as a truck driver with A & D Transport, and did “very little” sandblasting in 1991 and 1992. Dickerson, the former president of Dependable, testified that he never sold any sand in Virginia, nor did he sell sand to Mansville Industrial Coatings or in the Virgin Islands. Thus, Dependable contends that the only “time period during which Pierce could possibly claim exposure to Diamond Blast was from April 1986 until November 1986 and [during] a very small fraction of 1991 and 1992.”
¶ 20. Pierce could not recall where or when he used or was exposed to Diamond Blast sand. While Pierce was able to identify the Dependable Abrasives bag, he could not correctly identify the sand itself. He testified that the sand was white. Pierce’s testimony that the sand was white in color contrasted with Dependable President Dickerson’s uncontradicted testimony that his company’s sand was distinctly brown in color, due to its extraction from the red clay hills in or near Wiggins, Mississippi. Pierce further testified that Clark Sand, which he also professed to have used, was a white sand, just like that of Dependable Abrasives. Dickerson testified that Dependable never sold sand to any of the companies for which Pierce had *898 worked, though Dependable did sell to eighty or ninety customers who engaged in subcontracting activities. Dickerson responded affirmatively when asked whether he “wouldn’t know all the work sites that [his] sand reached.”[2]
¶21. The jury was instructed as follows:
The Plaintiff must prove by a preponderance of the evidence that he frequently and regularly used or was in close proximity to Defendant’s products under the circumstances that would make it reasonably likely that such product was a substantial contributing cause of his injury, if any. Mere evidence that Plaintiff was in close proximity to Defendant’s products on a single occasion, or on an infrequent basis is not sufficient to establish that Defendant’s products cause [sic] plaintiff injury if any.
The jury was provided a Jury Verdict Form which, in part, posed the following options:
If 9 or more of you find by a preponderance of the evidence (more likely true than not true) that the Defendants’ products were defective because they failed to provide adequate warnings or instructions OR were defective by design, if any, and caused injuries to the Plaintiff, state “YES” in the blank provided. If you find the answer to this question as to any Defendant is no, please indicate “NO.”
(Emphasis added.) As to Dependable Abrasives, the jury checked “NO.” Polling of the jury following the reading of the verdict revealed that the “NO” result was reached by a margin of eleven to one. The circuit court granted a new trial because “the jury’s finding that Dependable Abrasives did not have a defective product because they provided an adequate warning is against the overwhelming weight of the evidence presented at trial.”
¶22. While the circuit court held that the jury’s finding that Dependable Abrasives’ warning was adequate was against the overwhelming weight of the evidence, the circuit court altogether failed to analyze whether the jury’s determination of causation was against the overwhelming weight of the evidence. Even though an abundance of evidence may have been presented regarding the extent of Pierce’s exposure to respirable silica, with respect to Dependable Abrasives’ “failure properly to warn about the dangers of silica exposure, and how [Pierce’s] exposure to silica had caused silicosis,” as in Reeves, “[t]he plaintiff failed to adduce sufficient evidence from which a jury reasonably could conclude that any appreciable amount of the silica inhaled by [Richard Pierce] over the course of his career was supplied by [Dependable Abrasives].” Reeves, 141 So.3d at 384. In the present case, Pierce remembered the Diamond Blast bag and the warning label, but could not accurately recall the color of the sand, the very product that he alleged had caused his injuries. If he was exposed at all, the time frame in which Pierce could have worked with Diamond Blast sand was minimal. Indeed, this case is more favorable to the defense than Reeves, since the jury here rendered a verdict in favor of Dependable Abrasives.[3] Under the facts presented, this *899 conclusion cannot be said to have been “against the overwhelming weight of the trial evidence.”
¶ 23. This Court has held that “the jury should be ‘permitted to pass upon the question of fact raised by this conflicting evidence.’ ” Banks, 134 So.3d at 711 (quoting Searles v. Alabama & Vicksburg Ry. Co., 69 Miss. 186, 13 So. 815, 816 (1891)). “When evidence is conflicting, we defer to the jury’s determination of the credibility of witnesses and the weight of their testimony.” Banks, 134 So.3d at 711 (quoting Bickham v. Grant, 861 So.2d 299, 307 (Miss.2003) (quoting Ducker v. Moore, 680 So.2d 808, 811 (Miss.1996))). “The credibility of witnesses and the weight of their testimony, along with the interpretation of the evidence where there are multiple reasonable interpretations, is primarily a determination for the trier of fact.” Banks, 134 So.3d at 711 (citing Bickham, 861 So.2d at 307; Abrams v. Marlin Firearms Co., 838 So.2d 975, 981 (Miss.2003); Rainey v. Rainey, 205 So.2d 514, 515 (Miss.1967)).
¶ 24. In Banks, for instance, this Court reversed a grant of summary judgment to Sherwin-Williams where the evidence showed that only Sherwin-Williams paint was used on playground equipment and the paint tested positive for lead, “a jury could reasonably infer that the paint on the playground equipment came from Sherwin-Williams.” Banks, 134 So.3d 706, 711 (Miss.2014). The Court held that, while “Sherwin-Williams did an excellent job of compiling evidence to contradict the plaintiffs’ evidence that the lead paint on the playground equipment originated at its store in Cleveland, Mississippi,” the evidence “at best creates doubt that summary judgment is appropriate.” Id. at 712. In this case, the jury actually heard the contradictory evidence and rendered a verdict in favor of the defendant. As for product exposure and causation, allowing the jury’s verdict to stand cannot be said to amount to “an unconscionable injustice.” Johnson, 967 So.2d at 23 (citations omitted). The verdict here does not “shock the conscience or rest on a complete lack of evidence.” Id. (citations omitted). As such, we find that the circuit court abused its discretion in granting a new trial.

CONCLUSION

¶ 25. Though Pierce’s condition is terminal and his suffering immeasurable, insufficient evidence was adduced at trial to prove, by a preponderance of the evidence, that Dependable Abrasives’ Diamond Blast sand caused his silicosis. The jury’s verdict for Dependable Abrasives, therefore, was not against the overwhelming weight of the evidence. Because no causal link was established between Pierce’s injuries and Dependable Abrasives’ product, we reverse the circuit court’s grant of a new trial and render a judgment that the jury’s verdict for Dependable Abrasives be reinstated.
¶ 26. REVERSED AND RENDERED.
WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., NOT PARTICIPATING.

. Pierce's lawsuit against Dependable Abrasives was tried simultaneously with his claims against codefendant American Optical Corporation, a company which had produced allegedly defective equipment used for the purpose of protecting against dust inhalation. Pierce’s Motion for a Judgment Notwithstanding the Verdict, or in the Alternative, for New Trial, requested relief as to Dependable Abrasives only. The trial court granted Pierce a new trial against Dependable Abrasives.

. Pierce’s counsel did, in fact, question Dickerson about a sales invoice from Degussa Corporation, one of the companies for which Pierce testified he had worked, but the document was never marked for identification, offered as an exhibit, or entered into evidence. It does not appear in the appellate record.

. The verdict form, which nests causation in the same interrogatory with the adequacy of warnings, was drafted by Pierce’s counsel. It *899 is impossible to know precisely upon which element (inadequacy of warnings or causation) the verdict rested.