# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-IA-00061-SCT

*VICTORIA MORTON*

*v.*

*REERICKA BELK AND TRACEY J. CRAYTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/21/2018 |
| TRIAL JUDGE: | HON. CHARLES R. BRETT |
| TRIAL COURT ATTORNEYS: | KENNETH MAYFIELD |
| | GOODLOE T. LEWIS |
| | C. EMANUEL SMITH |
| COURT FROM WHICH APPEALED: | LEE COUNTY COUNTY COURT |
| ATTORNEY FOR APPELLANT: | GOODLOE T. LEWIS |
| ATTORNEYS FOR APPELLEES: | C. EMANUEL SMITH |
| | KENNETH MAYFIELD |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 06/18/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     After an automobile accident that occurred on March 19, 2015,  Reericka Belk and

Tracey J. Crayton filed suit against Victoria Morton in the County Court of Lee County,

Mississippi.  The case was tried by a jury in September 2017, and the jury returned a

unanimous verdict in favor of Morton.  Belk and Crayton filed a motion for a new trial,

claiming that the jury disregarded the instructions of the court and rendered a verdict contrary

to the overwhelming weight of the evidence.  The court granted the motion for a new trial.

Morton then filed the present interlocutory appeal.

## FACTS AND PROCEDURAL HISTORY

¶2.    On March 19, 2015, Belk and Morton were involved in an automobile accident.  The collision occurred at Barnes Crossing, an intersection in Tupelo, Mississippi.  The intersection has two westbound lanes, with a third lane for traffic turning right toward Kroger.  There are two eastbound lanes, with a turn lane in the center.  The intersection has no traffic signs or lights; however, there is an intersection nearby that does have traffic lights.  The accident occured in the late afternoon, and there was heavy traffic in the area.

¶3.    Morton was traveling west in the right turn lane, intending on turning right onto Melody Lane to go to Kroger.  Morton allegedly turned right onto Melody Lane, crashing into Belk.  However, the accident report filed by the officer who responded suggests that Morton had been in the right turn lane; instead of turning, however, Morton had decided to go straight.  Morton was traveling at approximately twenty to twenty-five miles per hour at the time of the accident.  Morton suffered minor injuries from the accident, including some loss of memory involving the accident and events that took place shortly after.

¶4.    Belk was on her lunch break at the time of the accident, traveling east on Barnes Crossing.  Belk attempted a left turn onto Melody Lane, intending to go to Kroger.  Traffic was at a standstill, but there was enough room between the cars for Belk to make her turn.  Belk was traveling between ten and fifteen miles per hour at the time of the accident, and she claims that she first saw Morton's vehicle two to three seconds before the accident.  Belk attempted to speed up to avoid the collision; however, Belk could not get out of the way fast

enough, and a collision occurred. Belk complained of a head injury, a cut on her leg, and back pain. Belk and Crayton, Belk's mother who owned the vehicle, sued Morton, asking for compensatory damages for loss of wages, medical expenses, and property damage.

¶5.    The jury rendered a unanimous verdict in favor of Morton. Belk and Crayton filed a motion for a new trial, arguing that the jury had disregarded the instructions of the court and had rendered a verdict contrary to the overwhelming weight of the evidence. The court granted the motion for a new trial. Morton then filed the present interlocutory appeal.

## STANDARD OF REVIEW

¶6.    "The grant or denial of a motion for a new trial is a matter within the trial court's sound discretion." *White v. Yellow Freight Sys., Inc.*, 905 So. 2d 506, 510 (¶ 7) (Miss. 2004) (citing *Green v. Grant*, 641 So. 2d 1203, 1207 (Miss. 1994)). When a trial judge is determining whether to grant or deny a motion for a new trial,

> [t]he credible evidence must be viewed in the light most favorable to the non-moving party. The credible evidence supporting the claims or defenses of the non-moving party should generally be taken as true. When the evidence is so viewed, the motion should be granted only when upon a review of the entire record the trial judge is left with a firm and definite conviction that the verdict, if allowed to stand, would work a miscarriage of justice. Our authority to reverse is limited to those cases wherein the trial judge has abused his discretion.

*Green*, 641 So. 2d at 1207–08 (quoting *Anchor Coatings, Inc. v. Marine Indus. Residential Insulation, Inc.*, 490 So. 2d 1210, 1215 (Miss. 1986)).

## DISCUSSION

**I.    Whether the trial judge abused his discretion by granting a new trial.**

¶7. In the case *sub judice*, the jury was properly instructed as to the law and its options for returning a verdict. The jury was instructed that it could find for Belk, Crayton, Morton, or find comparative fault and apportion fault as it saw fit. Some of the jury instructions given included the following:

> You are instructed, that under Mississippi law, the driver of a vehicle at an intersection intending to turn left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.

> Therefore, if you find by a preponderance of the evidence in this case that when Reericka Belk was making her left turn at the intersection in question, the vehicle of Victoria Morton was within the intersection or so close thereto as to constitute an immediate hazard, then you are instructed that Victoria Morton had the right-of-way at the time of the accident.

> If you find that Reericka Belk's failure to yield the right-of-way was a proximate contributing cause of the accident in question, then you shall apportion fault to the plaintiff, Reericka Belk, in accordance with my other instructions to you.

> Further, if you find that Reericka Belk's failure to yield the right-of-way was the sole proximate cause of the accident at issue in this case, then your verdict shall be for the defendant.

¶8. A similar instruction was given regarding Morton's potential liability:

> If you find from a preponderance of the credible evidence in this case that Reericka Belk gave a signal to turn and then yielded to any traffic within the intersection or so close thereto as to constitute an immediate hazard, then the duty to yield the right-of-way is assigned by law to Victoria Morton. If you further find the following, then your judgment shall be in favor of the Plaintiff and against the Defendant:

> 1. That Victoria Morton, under the circumstances, had the duty to yield to vehicles turning left in her path;

> 2. That Victoria Morton failed to yield to that vehicle operated as described herein by Reericka Belk; and

4

3.      As a result of Victoria Morton's failure to yield, a vehicular collision occurred, resulting in injury to Reericka Belk. The nature and amount of any such verdict shall be determined in accordance with the instructions of law given you in this case by the Court.

¶9.     After being correctly instructed on the law and informed of all relevant facts, the jury returned a verdict for the defense. "The credibility of witnesses and the weight of their testimony, along with the interpretation of the evidence where there are multiple reasonable interpretations, is primarily a determination for the trier of fact." *Banks ex rel. Banks v. Sherwin-Williams Co.*, 134 So. 3d 706, 711 (¶ 13) (Miss. 2014) (citing *Bickham v. Grant*, 861 So. 2d 299, 307 (¶ 34) (Miss. 2003)). "A new trial may be granted where the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty instructions, or when the jury has departed from its oath and its verdict is a result of bias, passion, and prejudice." *Dependable Abrasives, Inc. v. Pierce*, 156 So. 3d 891, 895 (¶ 12) (Miss. 2015) (internal quotation marks omitted) (quoting *Dupree v. Plantation Pointe, L.P.*, 892 So. 2d 228, 235 (¶ 24) (Miss. 2004)).

¶10.    The jury in the case *sub judice* was tasked with determining whether Morton or Belk was at fault. While a comparative-fault verdict could have been warranted, that is not what the jury decided. The jury, after being informed of all relevant law and facts, found that the defendant was not liable. The evidence did not overwhelmingly support either party. Because the jury did not return a verdict that was against the overwhelming weight of the evidence, the trial judge abused his discretion by granting a new trial.

**II.     Whether the jury returned a verdict that was the result of bias, passion, or prejudice.**

5

¶11.    In the motion for a new trial, Belk and Crayton argued that the verdict was a result of racial bias.  In his order granting the new trial, the trial judge did not find racial animus.  The trial judge stated, "[t]he Court does not wish to find racial animus since the [c]ourt was already firmly convinced that the jury totally ignored the law, the evidence, the exhibits, and the testimony."  The trial judge granted the new trial based on his opinion that the jury ignored the overwhelming weight of the evidence.  Additionally, Belk and Crayton do not pursue the argument further.  They raise the issue but make no new arguments, simply acknowledging that the trial judge did not find racial animus in his order to grant the new trial.

¶12.    Belk and Crayton allege racial animus in the jury verdict, arguing that since they are black women suing a white woman, the mostly white jury was influenced by racial prejudice.  However, the only evidence in the record that Belk and Crayton cite to support their argument is insufficent to establish racial bias. The racial issues were first presented by Belk and Crayton.  Race had not been mentioned in the entire trial or in any of the events leading up to the trial.  In closing arguments, counsel for Belk and Crayton said,

> I don't think that defendant's counsel nor the defendant really took this case that serious. I think they were pretty confident that the jury itself would decide a verdict based on something that the Court has already instructed them not to do, and that is based on race. It shouldn't be based on race. Race has nothing to do with it.

¶13.    Counsel for Morton objected, and the trial judge told opposing counsel to "move along."  In Morton's closing arguments, Morton's counsel said,

> Ladies and gentlemen, I have been sitting over there for the last few minutes racking my brain and trying to identify what it could be in my character or

6

demeanor that would lead them to accuse me of making a racist argument in this case. Essentially, calling me a racist.

¶14. Counsel for Belk and Crayton objected, and the judge again sustained the objection and told Morton's counsel to move on. Morton's counsel then stated, "You should expect better in Lee County." The exchange quoted above is the entire basis of the racial-animus claim, and it was initiated by the comments of Belk and Crayton's counsel.

¶15. Because the trial judge did not find racial animus as a reason to grant the new trial and because the issue was not argued on interlocutory appeal, the issue is without merit.

## CONCLUSION

¶16. The jury was properly instructed on the law and was informed of all the relevant facts. The verdict returned by the jury was not against the overwhelming weight of the evidence. The trial judge abused his discretion by granting the motion for a new trial. We reverse the trial court's order granting a new trial, and we reinstate the trial court's judgment entered on the jury's verdict.

¶17. **REVERSED AND RENDERED.**

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶18. Because I do not believe that the trial court abused its discretion by finding the jury verdict against the overwhelming weight of the evidence and ordering a new trial, I respectfully dissent. The evidence in this case overwhelmingly favored Belk. While it is true that a comparative negligence verdict could have been rendered, the jury could only render

7

a defense verdict if it ignored the evidence presented and the law.

¶19.    It is undisputed that Belk and Morton were traveling in opposite directions on the same road and that Belk was making a left turn through the intersection in question.  It is also undisputed that Morton entered into the intersection in question via the right-turn-only lane. What is disputed is whether Morton was turning right from that lane into the intersection or whether Morton was illegally going straight into the intersection from the right-turn-only lane.  At trial, Morton testified that she pulled into the lane going straight, that she was traveling five to ten miles per hour, and that she then pulled into the right turn lane and began traveling twenty to twenty-five miles per hour.  She testified that she was in the process of turning right when the collision occurred.  She testified that when she saw Belk's car, she slammed on her brakes, but did not turn her steering wheel to the left.  Yet, the police report stated that Morton said she was going to turn right, changed her mind, and proceeded going straight through the intersection.  Moreover, the damage to the vehicles is revealing. Photographs show that the front and back doors of Belk's vehicle on the passenger's side had been damaged. Photographs demonstrate that Morton's front fender was damaged, with the more significant damage located on the passenger's side of her front fender.  If Morton's trial testimony that she was in the process of turning right when the collision occurred and did not turn her steering wheel to the left was true, it renders the damage to the vehicles impossible. If Morton entered the intersection first and was in the process of turning right, and if Belk entered second and was in the process of turning left, the primary damage to Morton's vehicle would be located on the driver's side.  And the damage to Belk's vehicle would have

8

likely been closer to the front hood of the passenger's side. It is physically impossible for the passenger's side of the front fender of Morton's vehicle to have sustained the bulk of the damage if Morton was indeed in the process of turning right and did not turn the wheel to the left. It is true that the jury is the primary judge of credibility. But because Morton's theory of the accident was physically incapable of occurring based on the photographs of the vehicular damage, the trial court was justified in granting a new trial. When photographs contradict a party's "tenuous theory of an accident" and those photographs render such a theory highly improbable, that theory cannot support a jury verdict. *Johnson v. City of Pass Christian*, 475 So. 2d 428, 431 (Miss. 1985).

¶20. As the trial court noted, it is unequivocal based on the evidence that Morton was driving improperly. In any event, under an abuse of discretion standard, the trial court certainly did not abuse its discretion by granting a new trial given the significant evidence contradicting Morton's theory of the accident. Consequently, I respectfully dissent and would affirm the trial court, or, in the alternative, dismiss the interlocutory appeal.

**KITCHENS, P.J., JOINS THE OPINION.**